(173 App. Div. 991)

SHELDON et al. v. RUSSELL.

(Supreme Court, Appellate Division, Fourth Department. May 3, 1916.)

Cross-Appeals from Trial Term, Cattaraugus County.

Action by Jesse A. Sheldon and another against U. B. Russell. From a judgment for plaintiffs in part (91 Misc. Rep. 278, 154 N. Y. Supp. 632), plaintiffs appeal, and defendant takes a cross-appeal. Affirmed.

Argued before KRUSE, P. J., and FOOTE, LAMBERT, MERRELL, and DE ANGELIS, JJ.

Henry Donnelly, of Olean, for plaintiffs.
George A. Larkin, of Olean, for defendant.

PER CURIAM. Judgment affirmed, without costs of this appeal to either party. All concur, except

LAMBERT, J. (dissenting). The action is brought to set aside two certain tax deeds covering the premises in question. The plaintiffs are the purchasers at foreclosure sale, under a mortgage antedating the assessments which afford a basis for the deeds. The referee's deed to them identifies the property in question as being lots 4 and 5 in block 146 of the so-called Gosseline map of the village (now city) of Olean.

In 1910, and again in 1911, the assessors of the city of Olean assessed such lands for the purposes of state and county taxes, and in such assessment rolls identified said lands as being situated in ward 3, block 147, No. 210 North Clinton street, consisting of $14/1000$ acres of land, and assessed same as being owned by "Fred Tarbell et al." As a matter of fact, at that time, the title was owned by Fred Tarbell and some four others as tenants in common. The premises were occupied by a tenant, who resided within the city of Olean. The taxes for such two years having been returned unpaid, the premises were sold by the county treasurer of Cattaraugus county in satisfaction of such taxes, and upon such sale were bid in by the defendant. Thereafter followed the foreclosure sale, and then this action was brought to set aside and cancel such tax deeds.

Judgment rendered decrees such deeds valid only as to the interest of Fred Tarbell, and adjudges the defendant to be the owner of an undivided one-fifth interest in the lands and premises in question and to own no interest in the other four-fifths thereof. From such judgment both plaintiffs and defendant appeal; plaintiffs asserting that the tax deeds are wholly invalid, and the defendant insisting that such deeds covered the entire title, and not merely the one-fifth interest of Fred Tarbell. Many numerous technical defects in the procedure adopted, leading up to the giving of the tax deeds in question are urged to have existed and to have been vital. In the main, however, the proceedings were in substantial compliance with the Tax Law, except in the particulars hereinafter pointed out.

The most serious defect in the procedure asserted is the identification of the lands, both by description and by ownership, in the original assessment roll. It appears that the first well-recognized map of Olean was the Gosseline map, but that a number of years ago another map of the city was made, commonly known as the "Blakesley map." The two maps are not identical in the numbering of blocks and lots. The block containing the premises in question is identified on the Gosseline map as being 146, and on the Blakesley map as being 147. The description in the assessment roll refers to neither map specifically, although it happens that the block number there given is that recorded upon the Blakesley map.

The levying and collection of taxes against real property partakes sufficiently of the nature of taking individual property for public ends as to require a substantial compliance with all the technical provisions of the Tax Law and further to require a sufficient identification of the premises taxed, in the assessment roll itself, to permit the location and separation of same from other lands. This rule was recently well discussed by the Court of Appeals in the case of Fulton v. Krull, 200 N. Y. 105, 93 N. E. 494. Nor is it possible to bolster up the description in the assessment roll itself by reference to the Blakesley map, inasmuch as the Blakesley map is not mentioned in the assessment roll. If this were possible, then reference to the Blakesley map would indicate the boundaries and precise location of the lands attempted to be taxed. As was said in Fulton v. Krull, supra:

" * * * We also hold that, no reference having been made in the roll to the map which had been filed in the clerk's office, resort cannot be had to that for the purposes of description and identification of the lands attempted to be assessed."

When the tax deeds were given, attempt was made therein to more definitely describe these lands, and such tax deeds bound such lands by the lands of the surrounding owners. The more definite description in the deed, however, cannot be resorted to, to help out the description in the assessment roll. Again, in Fulton v. Krull, supra, the court said:

" * * * We of course agree with the appellant that the description employed in the assessment roll cannot be helped out by additional details of description incorporated into the deed."

Clearly, then, the description of the premises sought to be taxed in the instance under investigation, has no definiteness in its reference to block 147. The boundaries of the lot are not indicated, and there is nothing to show any location of the premises, except the reference to street number. I am not aware that any court has ever approved a reference to a street number as a sufficient designation of premises sought to be taxed or conveyed. Different municipalities adopt different street frontages in determining the numerals to be applied to different properties. In one municipality, each 25 feet may be assigned a number; in another, each 50 feet; and even these measurements are usually varied to correspond to some extent to the buildings upon the premises. In any event, the reference to street number does not indicate anything of the precise location of the boundaries of these lots and from the description in the assessment roll alone it would be wholly impossible for any person to determine just what lands were sought to be taxed.

Again, the reference to the owners of the property as being "Fred Tarbell et al." is misleading. Such an assessment indicated upon its face that Fred Tarbell is but one of several owners, and the identity of the other owners is not disclosed. Attempt is made by the defendant to justify this form of naming the owners of the property assessed, and such justification is sought to be found in section 63 of the Tax Law (Consol. Laws, c. 60). That section reads as follows:

"The assessment of a nonresident parcel of real estate in the resident portion of the roll, the assessment of a resident parcel of real estate in the nonresident portion of the roll, an error in the name of the owner or occupant or the assessment of a parcel of real estate to the name of a deceased person or to his estate, shall not render the assessment invalid or render the tax levied on the valuation of said real estate invalid. The board of supervisors of each county may at any time before levying the tax as provided in this article, at the request of the supervisor of the tax district in which the real estate is situated, correct any errors which may come to his knowledge in the assessment of any parcel of real estate in his district, in either of the cases mentioned in this section."

I am not prepared to ascribe to section 63 the force and effect claimed by the defendant. The title of the section is "Certain Errors in Roll, to be Corrected." The section is divided into two sentences. The first declares that a misnomer of the owner shall not invalidate the assessment. The second sentence authorizes the board of supervisors to correct any such error. To my mind the two sentences are to be read together, and in the first is to be found authority for retaining in the assessment sufficient validity as to obviate the necessity of reassessing until the board of supervisors shall have had opportunity to make the correction provided for in the second sentence. Read together, this makes a comprehensive and logical scheme. The assessment erroneously made to the wrong owner does not thereby become invalid, but retains validity as an assessment, sufficient so that, when the board of supervisors has corrected the error, then the assessment is in all respects valid and may be enforced. I do not read section 63 as being express permission in the assessors to ascribe to lands assessed such ownership as they may see fit, but in it I see merely a remedial statute

for the correction of errors honestly made. In this view I find support in section 9 of the Tax Law. That section reads as follows:

"When real property is owned by a resident of the tax district in which it is situated, it shall be assessed to him. When real property is owned by a resident outside the tax district where it is situated, and is occupied, and the occupant is a resident of the tax district, it shall be assessed to either the owner or occupant. If the occupant resides out of the tax district or if the land is unoccupied, it shall be assessed as nonresident, as hereinafter provided by article 2. In all cases the assessment shall be deemed as against the real property itself, and the property itself shall be holden and liable to sale for any tax levied upon it."

By section 9, it will be observed, three classifications of assessments are made. In the first are embraced those instances where the owner of the property assessed resides within the tax district, and there the statute requires that the land be assessed to the owner. In the second class are those instances where the property is occupied, but where the owner resides without the tax district and the occupant resides within the tax district. Here again is express statutory direction that the assessment be made either to the occupant or to the owner. In the third class are those instances where neither the owner nor the occupant reside within the tax district, and the mode of assessment under the third class is entirely different. Under such classification this assessment falls within the second class. It is conceded that all of the owners resided without the tax district. In this instance the assessors were plainly required by express statutory direction to assess these premises either to the occupant or to the owner. No attempt was made to assess the occupant, and hence the statute requires the assessment to be to the owner.

Sections 9 and 63 of the Tax Law are apparently to be read together, and no force or effect is to be detracted from section 9 by the provision of section 63. The latter provision is in aid of the former and looks to the same end and permits the board of supervisors, when the roll is brought before it, to correct errors in the particulars therein mentioned, made by the assessors in endeavoring to comply with section 9. Section 9 was not complied with, for the assessors assessed lands to one only out of five owners. This error was never corrected by the board of supervisors, and hence section 63 was never invoked. Section 21 required the names of all the taxable persons in the tax district to be set forth in the first column of the roll. This was also disregarded. In my judgment we cannot say that the noncompliance with the plain requirements of section 9 was trivial or unimportant. "That which the Legislature has directed, courts cannot declare immaterial." May v. Traphagan, 139 N. Y. 478, 34 N. E. 1064; Lockwood v. Gehlert, 127 N. Y. 241, 27 N. E. 812; Sanders v. Downs, 141 N. Y. 422, 36 N. E. 391.

Effort is made to avoid the plain requirement of section 9 by the last provision of the section, which prescribes that the assessment shall be against the land in each instance. From such provision it is argued that the ownership is immaterial, particularly where the owner is a nonresident, inasmuch as no personal liability is or can be created against him. It suffices to say that the ownership is material, at least

to the extent of its effect upon the identification of the property taxed. Particularly is that view important here, where nothing contained in the description of the property points out the property with any certainty. The assessment to "Fred Tarbell et al." but adds to the confusion as a means of identity or description. To my mind it is clear that this roll did not comply with the express provisions of the statute in identifying the property or in indicating its ownership, and hence it falls within the condemnation of Fulton v. Krull, supra.

I recommend a reversal, and the direction of judgment for the plaintiffs, adjudging the tax deeds to be invalid.